**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| **In re** | |
| **PETER SIKES,** | **Case No. 19-30419 (AMN)** |
| **Debtor.** | **Chapter 7** |
| _____ | |
| **WILLIAM K. HARRINGTON,** | Adv. Proc. 20-_____ (AMN) |
| **United States Trustee for Region 2,** | |
| **Plaintiff,** | |
| **v.** | |
| **PETER SIKES,** | |
| **Defendant.** | |
| _____ | |

**COMPLAINT TO REVOKE AND DENY DEBTOR'S DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(d) AND 11 U.S.C. § 727(a)(2) and (a)(4)(A)**

William K. Harrington, the United States Trustee for Region 2, by and through his

undersigned counsel, for his complaint against **PETER SIKES** hereby alleges as follows:

**JURISDICTION AND VENUE**

1.      This Complaint initiates an adversary proceeding as contemplated by Rule

7001(4) of the Federal Rules of Bankruptcy Procedure ("FRBP").  This controversy is a "core

proceeding" as the term is defined by 28 U.S.C. § 157(b)(1) and (b)(2)(J).

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(J) and 1334 in that it arises under 11 U.S.C. § 101, *et seq.* ("Bankruptcy Code")

and arises in or relates to the bankruptcy case now pending before this Court, styled: In re Peter

Sikes, Case No. 19-30419 (AMN).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## PARTIES

4.      The plaintiff William K. Harrington is the duly appointed United States Trustee

for Region 2 (the "United States Trustee").

5.      The United States Trustee is authorized to commence this adversary proceeding

pursuant to 11 U.S.C. § 727(c).

6.      The defendant is Peter Sikes, the chapter 7 debtor in Case No. 19-30419 (AMN).

## PROCEDURAL BACKGROUND

7.      On March 21, 2019 (the "Petition Date"), defendant Peter Sikes (the "Debtor")

filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition"). *See*

ECF 1 attached hereto as Exhibit A.

8.      On or about March 21, 2019, Barbara H. Katz, Esq. was appointed trustee of the

Debtor's estate ("Trustee Katz").

9.      The Debtor was represented by Attorney James Nugent during his chapter 7

case. *See* ECF 1.

10.     On September 6, 2019, the Debtor received a chapter 7 discharge (the

"Discharge"). *See* ECF 32.

11.     On October 9, 2019, Attorney Jeffrey Hellman ("Attorney Hellman") filed a

complaint on behalf of his client, creditor GigaNet Systems, Inc. ("GigaNet") under 11 U.S.C. §

523(a)(2) alleging false pretenses, false representation, and actual fraud. *See* ECF 39.

12.     Pursuant to Section 727(e)(1), the deadline to file a complaint seeking revocation

of the Debtor's discharge under Section 727(d)(1) is within one year after the discharge is

granted. The Debtor received his Discharge on September 6, 2019 and this complaint is timely

filed within one year thereafter.

<u>**DEBTOR'S IMPROPER DISCLOSURE OF ASSETS AND**</u>

<u>**NON-DISCLOSURE OF GIFTS/TRANSFERS**</u>

*(a) Debtor's Schedules and Statement of Financial Affairs*

13.      On March 21, 2019, the Debtor filed a Schedule AB ("Original Schedule AB")

and, at Question 19, disclosed interests in two limited liability companies: Core Technologies

LLC of which he claims a 100% ownership and Shoreline Pixels LLC of which he claims a

10% ownership. *See* Exhibit A at page 13 of 43.

14.      On March 21, 2019, the Debtor signed a Declaration About an Individual

Debtor's Schedules (the "Declaration") which contained the following oath over his signature:

"Under penalty of perjury, I declare that I have read the summary and schedules filed with this

declaration and that they are true and correct." *Id*. at Original Declaration at page 30 of 43. The

Declaration was filed with the Original Schedule AB on March 21, 2019. *Id.*

15.      On April 11, 2019, the Debtor filed an Amended Schedule AB (the "Amended

Schedule A/B"). *See* Exhibit B, the Amended Schedule AB.

16.      The Debtor's Amended Schedule AB contained the same response to question 19

as on the Debtor's Original Schedule AB.[1] *Id*.

17.       On March 21, 2019, the Debtor filed a Statement of Financial Affairs for

---

[1] The United States Trustee notes that the Debtor failed to file a Declaration with the Amended
Schedules AB. *See* Exhibit B; *see also* Docket generally.

Individuals Filing for Bankruptcy (the "SOFA"). *See* Exhibit A at page 31-37 of 43.

18.    On the SOFA, the Debtor answered "no" in response to Question 13, which requires the Debtor to disclose whether "[w]ithin 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person." *Id*. at page 34 of 43.

19.    Also on the SOFA, the Debtor answered "no" in response to Question 18, which requires the Debtor to disclose whether "[w]ithin 2 years before you filed for bankruptcy, did you . . . transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs." *Id*.

20.    Also on the SOFA, the Debtor, in response to Question 20, which requires the Debtor to disclose whether he "[w]ithin 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred," the Debtor answered "yes" and listed two financial accounts held at Wells Fargo Bank: a joint checking account (the "WF Joint Checking Account") and a joint savings account (the "WF Joint Savings Account"), both held with his non-debtor spouse, Andrea Sikes ("Ms. Sikes"). *See* Exhibit A at page 35 of 43.

21.    Also on the SOFA, the Debtor discloses his interest in two limited liability companies: Core Technologies, LLC ("Core") and Shoreline Pixels, LLC. *Id*. at page 36-43.

22.    On March 21, 2019, the Debtor signed a declaration which contained the following oath, in pertinent part, over his signature: "I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct." *Id*. at page 36-37 of 43.

4

### (b)    Section 341 Meeting

23.    On April 30, 2019, the Debtor testified under oath at a Section 341 meeting of creditors in response to questions from Trustee Katz (the "341 Meeting"). A transcript of the 341 Meeting is attached hereto as Exhibit C.

24.    At the 341 Meeting, Trustee Katz inquired of the Debtor if he had "review[ed] and sign[ed] the bankruptcy petition and schedules, the statement of financial affairs, and all the related documents before they were filed with the court," to which the Debtor testified in response "I did." *See* Exhibit C at page 3, lines 20-24.

25.    At the 341 Meeting, Trustee Katz inquired of the Debtor if "[t]o the best of [his] knowledge, is that information true, complete, and accurate," to which the Debtor testified in response "yes." *Id*. at page 4, lines 3-5.

26.    At the 341 Meeting, Trustee Katz inquired of the Debtor if "there [were] any additions or corrections that need to be made to the information," to which the Debtor testified in response "no." *Id*. at lines 6-8.

27.    At the 341 Meeting, Trustee Katz inquired of the Debtor if "[i]n the last four years, have you sold or transferred any type of property to anyone," to which the Debtor testified in response "no." *See* Exhibit C at page 9, lines 18-20.

28.    At the 341 Meeting, Trustee Katz inquired of the Debtor if "[i]n the last four years, have you made any large or unusual gifts to anyone," to which the Debtor testified in response "no." *Id*. at lines 21-23.

29.    Later, at the 341 Meeting, Trustee Katz inquired again of the Debtor if "[i]n the last four years, have you made any large or unusual gifts to anyone," to which the Debtor again

testified in response "no." *Id*. at page 10, lines 10-12.

### (c) Debtor's undisclosed gift/transfer

30.      On April 11, 2018, the Debtor transferred $30,000.00 from a Wells Fargo

Business Choice Checking with an account number ending in 2026 held in the name of Core

Technologies, LLC (the "Core WF Account") to the WF Joint Savings Account with an account

number ending in 5858. *See* Exhibit D, the April 1, 2018 Core WF Account Statement; *see also*

Exhibit E, April 1, 2018 WF Joint Savings Account Statement.

31.      On April 19, 2018, the Debtor transferred $53,000.00 from the WF Joint Savings

Account to the WF Joint Checking Account with an account number ending in 9032. *See*

Exhibit E; Exhibit F, the March 23, 2018 WF Joint Checking Account Statement.

32.      On May 2, 2018, $50,000.00 was withdrawn from the WF Joint Checking

Account via Check No. 4010 (the "$50,000.00 Check"). *See* Exhibit G, the April 23, 2018 WF

Joint Checking Account Statement.

33.      On May 2, 2018, the $50,000.00 Check was deposited into an account held at

People's United Bank ("PUB") with an account number ending in 9393, which account is solely

in the name of Ms. Sikes (the "$50,000.00 Gift/Transfer"). *See* Exhibit H, Ms. Sikes' May 7,

2018 PUB Statement.

### (d)      Debtor's Testimony at the 2004 Examination

34.      On May 9, 2019, Attorney Hellman filed a Motion for a Rule 2004 Examination

of the Debtor (the "2004 Motion"). *See* ECF 9.

35.      On May 30, 2019, this Court, after a hearing and over an objection filed by the

Debtor (ECF 10), entered an order Granting the 2004 Motion. *See* ECF 14.

36.     On August 15, 2019, Attorney Hellman conducted the Rule 2004 Examination (the "2004 Examination"), at which the Debtor gave sworn testimony. A copy of the transcript of the 2004 Examination is attached as Exhibit I.

### a.   Testimony Related to Core Technologies LLC

37.     At the 2004 Examination, the Debtor testified that Core operated as a manufacturer's representative for telecom test equipment. *See* Exhibit I at page 4, lines 17-20.

38.     At the 2004 Examination, the Debtor testified that he and Kevin Langdon ("Mr. Langdon") were co-owners of Core, with the Debtor having 80% ownership and Mr. Langdon the remaining 20%. *Id*. at page 5, lines 5-12.

39.     At the 2004 Examination, the Debtor testified that Core was operating from April 2001 until it dissolved in March 2019. *Id*. at lines 16-19.

40.     At the 2004 Examination, the Debtor testified that on January 29, 2018, Core received a demand letter from Wells Fargo ("Wells Fargo") (the "WF Demand") regarding a credit line issued to Core, but to which the Debtor and Mr. Langdon were personal guarantors. *See* Exhibit I, at page 9, lines 24-25; page 10, line 1.

41.     At the 2004 Examination, the Debtor testified that the receipt of the WF Demand was the first indication that Wells Fargo would not extend the terms to the credit line, on which, upon information and belief, was critical to keep Core in business. *Id*. at page 12, lines 2-4.

42.     At the 2004 Examination, the Debtor testified that it had conducted business with GigaNet since approximately 2004, and that GigaNet was a supplier of telecom emulators or, in the Debtor's words, "an internet in a box, basically." *Id*. at page 28, lines 1-15; page 29 at lines 1-7.

43.      At the 2004 Examination, the Debtor, in response to Attorney Hellman's question of whether he had issued a particular purchase order to GigaNet in February of 2018 (the "GigaNet PO"), testified "I did." *Id*. at page 33, lines 2-8.

44.      At the 2004 Examination, the Debtor testified that: the GigaNet PO was issued for services that GigaNet provided another company, EMC related to a maintenance renewal unit; GigaNet had provided the services to EMC; that EMC paid Core for said services; and that Core did not pay GigaNet. *See* Exhibit I, at page 33, lines 9-25; page 34, lines 1-2.

45.      At the 2004 Examination, the Debtor testified that around March or April of 2018, he "froze all of [Core's] assets until we figured out what we were going to have to pay and what we did not have to pay . . ." and thus, were not paying any of its vendors. *Id*., at page 39, lines 5-7.

### b.  *Testimony Related to the Transference of Monies*

46.      At the 2004 Examination, the Debtor testified that he moved monies (the "Moved Monies") from his business account to his personal savings account, which was, upon information and belief, the WF Joint Savings Account. *See* Exhibit H at page 50, lines 4-8.

47.      Upon information and belief, the Moved Monies that are the subject of the 2004 Examination and the $50,000.00 Gift/Transfer are one in the same.

48.      At the 2004 Examination, the Debtor testified that he relocated the Moved Monies from the WF Joint Savings Account to "another account at another bank . . ." *Id*. at line 16-17.

49.      In response to Attorney Hellman's question regarding into which bank Moved Monies were transferred, the Debtor testified "People's." *Id*. at lines 23-24.

50.    In response to Attorney Hellman's question "[i]n whose account was that money in," the Debtor testified "My wife's." *See* Exhibit I, at page 50, line 25 and page 51, line 1.

51.    In response to Attorney Hellman's question of whether the Debtor recognized the bankruptcy petition and schedules in this case, and whether he had reviewed the document before it was filed, the Debtor testified "I did." *Id.* at lines 17-22.

52.    Attorney Hellman inquired of the Debtor if it was correct that he (the Debtor) did not list the transfer of the monies to Ms. Sikes on his SOFA because it was his belief that he did not personally give that money to Ms. Sikes, but that Core did, to which the Debtor testified "yes." *Id.* at page 52, lines 1-11.

53.    In response to Attorney Hellman's question of whether Ms. Sikes had any position with Core, the Debtor testified "no." *Id.* at lines 12-14.

54.    In response to Attorney Hellman's question of whether Ms. Sikes was a creditor of Core at the time the money was given, the Debtor testified "no." *Id.* at lines 15-17.

55.    In response to Attorney Hellman's question of whether Ms. Sikes had any entitlement to that money from Core, the Debtor testified "no." *See* Exhibit I, page 52 at line 18-20.

## FIRST CAUSE OF ACTION - 11 U.S.C. § 727(d)(1)
### (Revocation of Discharge)

56.    Paragraphs 1 through 55 are hereby repeated and realleged as though fully set forth herein.

57.    Pursuant to Section 727(e)(1), the deadline to file a complaint seeking revocation of the Debtor's discharge under Section 727(d)(1) is within one year after the discharge is

granted. The Debtor received his Discharge on September 6, 2019 and this complaint is timely

filed within one year thereafter.

58.     Prior to the Debtor's Discharge, the United States Trustee had no knowledge that

grounds existed to seek denial of discharge.

59.     Based upon information and belief, the Debtor, **PETER SIKES**, obtained his

discharge by fraud by failing to disclose the $50,000.00 Gift/Transfer he gave to Ms. Sikes as

either gift or a transfer on his SOFA. By reason of the foregoing, the Plaintiff, on behalf of the

bankruptcy estate, is entitled to judgment from the Bankruptcy Court REVOKING THE

DISCHARGE of Debtor, **PETER SIKES**, pursuant to 11 U.S.C. §727(d)(1).

**SECOND CAUSE OF ACTION - 11 U.S.C. § 727(d)(1)**
**(Revocation of Discharge)**

60.     Paragraphs 1 through 55 are hereby repeated and realleged as though fully set

forth herein.

61.     Pursuant to Section 727(e)(1), the deadline to file a complaint seeking revocation

of the Debtor's discharge under Section 727(d)(1) is within one year after the discharge is

granted. The Debtor received his Discharge on September 6, 2019 and this complaint is timely

filed within one year thereafter.

62.     Prior to the Debtor's Discharge, the United States Trustee had no knowledge that

grounds existed to seek denial of discharge.

63.     Based upon information and belief, the Debtor, **PETER SIKES**, obtained his

discharge by fraud by failing to disclose the $50,000.00 Gift/Transfer he gave to Ms. Sikes to

Trustee Katz at the 341 Meeting. By reason of the foregoing, the Plaintiff, on behalf of the

bankruptcy estate, is entitled to judgment from the Bankruptcy Court REVOKING THE

10

DISCHARGE of Debtor, **PETER SIKES**, pursuant to 11 U.S.C. §727(d)(1).

### THIRD CAUSE OF ACTION - 11 U.S.C. § 727(a)(2)
**(Denial of Discharge)**

64.     Paragraphs 1 through 55 are hereby repeated and realleged as though fully set forth herein.

65.     Based upon information sufficient to form a reasonable belief, the Debtor, **PETER SIKES**, with an attempt to hinder, delay or defraud creditors and/or Trustee Katz and the Debtor's bankruptcy estate, transferred, removed, and/or concealed or permitted to be transferred, removed or concealed property of the bankruptcy estate relating to the $50,000.00 Gift/Transfer he transferred to Ms. Sikes prior to the date of the filing of the Debtor's bankruptcy petition and thus has forfeited his right to obtain a discharge of his debts pursuant to 11 U.S.C. § 727(a)(2).

### FOURTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)
**(Denial of Discharge)**

66.     Paragraphs 1 through 55 are hereby repeated and realleged as though fully set forth herein.

67.     Based upon information sufficient to form a reasonable belief, by failing to disclose the $50,000 Gift/Transfer , the Debtor, **PETER SIKES**, has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### FIFTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)
**(Denial of Discharge)**

68.     Paragraphs 1 through 55 are hereby repeated and realleged as though fully set forth herein.

11

69.     Based upon information sufficient to form a reasonable belief, by listing that he was the sole, 100% owner of Core on his Original Schedule AB and Amended Schedule AB , the Debtor, **PETER SIKES**, has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

**SIXTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)**
**(Denial of Discharge)**

70.     Paragraphs 1 through 55 are hereby repeated and realleged as though fully set forth herein.

71.     Based upon information sufficient to form a reasonable belief, by testifying under oath at his Section 341 Meeting that everything in his bankruptcy documents/papers was true, that he listed all of his assets on his bankruptcy papers, and there were no errors or omissions in his bankruptcy papers, the Debtor, **PETER SIKES**, has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the United States Trustee respectfully requests:

        a.   revocation of the Debtor's discharge;

        b.   denial of the Debtor's discharge;

        c.   the costs of suit; and

        d.   for such other and further relief as is just and proper.

Dated at New Haven, Connecticut this 2nd day of September, 2020.

                        WILLIAM K. HARRINGTON
                        UNITED STATES TRUSTEE FOR REGION 2

      By:    */s/ Kari A. Mitchell*
              Kari A. Mitchell/phv08341
              Trial Attorney
              Office of the United States Trustee
              Giaimo Federal Building
              150 Court Street, Room 302
              New Haven, CT 06510-7016
              (203) 773-2210